1    Tsvetana Yvanova
2    22054 Crespi Street
3    Woodland Hills, California [91364]
4    1.818.730.2050
5    Pro Per

FILED
CLERK, U.S. DISTRICT COURT

JUL 1 7 2015

CENTRAL DISTRICT OF CALIFORNIA
BY_____ DEPUTY

6

# UNITED STATED DISTRICT COURT

7

## CENTRAL DISTICT OF CAIFORNIA

8

9

Tsvetana Yvanova,

    Petitioner

      v

DEUTSTCHE BANK NATIONAL TRUST Co for MSAC 2007 Trust HE-1, OCWEN FINANCIAL et Seq. NEW CENTURY MORTGAGE CPRPORATION, BLACKSTONE INVITATION HOMES aka THR CALFORNIA, Does 1 thru 90

Case No. **CV 15 - 05460 - SJO (PJWx)**

**COMPLAINT FOR DECLARATORY JUDGMENT OF TILA RESCISSION, QUIET TITE, SETTING ASIDE VOID AB INITIO SECURITY INSTRUMETS, RESTORING OF US LAND PATENT, INJUNCTIVE RELIEF, TRO**
Title 15 USC 1635 (A)(F)

Appellant in Pro Per
Hearing Date:_____
Dept:_____

10

11

12    TO THIS COURT AND ALL COUNSELS OF RECORD Petitioner Tsvetana Yvanova

13    respectfully files this petition for a TILA Rescission , Declaratory Judgment, Quiet Title,

14    Establishing the title of US Land Patent Update, for Injunctive relief and Temporary

15    Restraining Order to the Defendants, Deustche Bank National Trust, Ocwen Financial,

16    New Century Mortgage Corporation, Blacktone Invitation Homes LP aka THR California

17    LLC/LP, who have acted in conjunction to proceed with foreclosure to eviction, by means

18    of using void Assignments and other void security instruments, in addition to general

19    misleading methods to cloud the title, confiscate the Plaintiff land, remove her from her

20    studio and home without having any real proof of title .

21    Respectfully Submitted on July 16, 2015:

22

23          Tsvetana Yvanova, Plaintiff,

24          All Rights Reserved, Without Prejudice

# TABLE OF CONTENTS

ISSUES PRESENTED_____.3

   I. JURISDICTION_____3.

   II. PARTIES TO THE PROCEEDINGS_____3.

   III. STATEMENT_____3.

        1. Statutory and Regulatory Background_____3.
        2. The repercussions of an incompete (unfunded) trans ___5
        3. 15 U.S.C.A. §§ 1601[1] - Right To Rescision_____.5
        4. 6500 - Consumer Protection , *Sec. 226.23Right of Rescission*
        5. 15 U.S. Code § 1635 - Right of rescission _____6.
        6. An overview of Title 15 U.S.C. § 1692g, titled "validation of
        debts,"_____7 .
   IV. INTRODUCTION_____8.
        1. General Issues_____8.
        2. History of the Notices Mailed_____8.
        3. The importance of US Supr. Court decision on Jesinoski____11 .
        4. Factual Background_____12 .
   V. CLARITY IN CIRCUIT COURTS ON TILA ISSUES_____13 .
        1. Strong Evidence Suggest That Plaintiff Yvanova Signature On TILA
        Disclosure documents  And The Cancellation Notices of 2006  are Pure
        Forgery._____15 .
        2. Section 1635's Plain Text Establishes That Notice To A Creditor Is
        Sufficient To Exercise The Right To Rescind _____15.
        3. The Structure And Purpose Of The Truth In Lending Act Confirm That
        Notice Alone Is Sufficient To Exercise The Right To Rescind_____16.
        4. Regulation Z Removes All Doubt That Written Notice Is Sufficient To
        Exercise The Right To Rescind_____17.
   VI. TILA VIOLATIONS AND IRREGULARITIES REPORT  IN PLAINTIFFS
   ORIGINATION DOCS by AUDITOR ROUGEUX_____20 .
        1. Lender failed to provide that the disclosures were clearly and conspicuously
        provided in a form that the consumer may keep _____20 .
   VII. STANDING_____24 .
        1. Failure to prove standing_____24 .
        2. Standing requirements There are three standing requirements_____26
        3. *Jus tertii* (Latin, ―*third party rights*‖)_____26.
   VIII. LEGAL THEORY BEHIND REG Z_____27 .
        1. Regulation Z, 226.17 (c)_____27.
   IX. MULTIPLE ASSIGNMENT  ISSUES_____28 .
        1.. It is impossible in any way to have two separate and concurrent transfers
        and instruments that purport to  convey the same security _____28.

---

[1] **TILA) (15 U.S.C.A. §§ 1601 et seq.) The Truth in Lending Act** (was enacted to assure that creditors provide a meaningful disclosure of credit terms so that consumers will be able to compare more readily the various credit terms available to them. To this end, the credit transaction provisions of TILA require creditors to clearly and conspicuously disclose certain key terms and costs before consummating a credit transaction. The failure to properly disclose required information, as was the case in *Shepeard v Quality Siding & Window Factory, Inc. (1990, DC Del) 730 F Supp 1295, 113 ALR Fed 727*, where a creditor who made disclosures on two separate documents at two separate times was found to have violated the TILA requirement that all required disclosures be grouped together, may result in rescission of the transaction, damages, or both.

2 .General Facts of the title_____ 28.
3.The First Circuit in *Woods* provided further examples of this "void" versus
"voidable" distinction:_____ 32.
X.    CONCLUSION_____ 34.
XI.   PRAYER FOR RELIEF_____ 34.
XII.  DECLARATION_____ 35.
XIII. LIST OF EXHIBITS _____ 36.

## ISSUES PRESENTED

**First** : First issue is for the court to affirm and establish that the rescission of Yvanova

Note & Deed of Trust is complete an effective from the time it was mailed in 2011.

The Truth in Lending Act provides that a borrower "shall have the right to rescind the

transaction until midnight of the third business day following ... the delivery of the

information and rescission forms required under this section ... by notifying the creditor

... of his intention to do so." 15 U.S.C. § 1635(a). The Act further creates a "[t]ime limit

for [the] exercise of [this] right," providing that the borrower's "right of rescission shall

expire three years after the date of consummation of the transaction" even if the

"disclosures required ... have not been delivered." *Id.* § 1635(f)..

**Second** question posted here is – given the TILA Rescission by means of timely

Cancellation, and given the attempted securitization effort, do the Defendants have

standing to proceed with foreclosure and eviction , following an incomplete funding of

the purported loan transaction and using void instruments in the multilayered and

fraudulent deceitful misrepresentation in majority of recorded instruments on title,

starting from the Assignments .

## I.    JURISDICTION

Relevant provisions of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.,* and of the

Federal Reserve Board's Regulation Z , 15 USC 1635 (a) (f

## II. PARTIES TO THE PROCEEDINGS

Petitioners Tsvetana Yvanova is the Plaintiff in this instant case. Respondents

Deustche Bank National Trust, Ocwen Financial Inc, with its closely related affilates

Western Progressive, and Altisource Portfilio Sarl., Blackstone Group invitation Homes

1  aka THR California LLC/LP a DE Limited Partnership, a Delaware Corporation; New

2  Century Liquidating Trust and John and Jane Does 1-10 were the defendants and the

3  appellees in the proceedings below.

4  ### III.STATEMENT

5  ### 1. Statutory and Regulatory Background

6  Congress enacted the Truth in Lending Act "to assure a meaningful disclosure of credit

7  terms so that the consumer will be able to compare more readily the various credit

8  terms available to him and avoid the uninformed use of credit, and to protect the

9  consumer against inaccurate and unfair credit billing ... practices." 15 U.S.C. §

10  1601(a). The Act therefore requires creditors to disclose to borrowers various terms of a

11  credit transaction, including "finance charges, annual percentage rates of interest, and

12  the borrower's rights." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) (citing 15

13  U.S.C. §§ 1631, 1632, 1635, 1638).

14  Section 1635(a) provides that a borrower who secures the loan with a principal

15  dwelling "shall have the right to rescind the transaction until midnight of the third

16  business day following the consummation of the transaction or the delivery of the

17  information and rescission forms required under this section ... whichever is later, by

18  notifying the creditor ... of his intention to do so." 15 U.S.C. § 1635(a). Section 1635(a)

19  thereby creates an unconditional right to rescind for three days after the consummation

20  of the transaction and, as a remedy for a creditor's violation of the Act's disclosure

21  requirements, extends that right to rescind until three days following the ultimate

22  delivery of the required disclosures.

23  A borrower's exercise of the right to rescind under Section 1635(a) sets in motion a

24  series of automatic steps to unwind the transaction, imposing obligations on both the

25  creditor and the borrower. When a borrower "exercises his right to rescind under

26  [Section 1635(a)], he is not liable for any finance or other charge, and any security

27  interest given by the [borrower] . . . becomes void upon such a rescission." *Id.* §

28  1635(b). Section 1635(b) next provides that, "[w]ithin 20 days after receipt of a notice

29  of rescission, the creditor shall return to the [borrower] any money or property given as

30  ... downpayment. . . and shall take any action necessary or appropriate to reflect the

31  termination of any security interest created under the transaction." *Id.* Subsequently,

32  "[u]pon the performance of the creditor's obligations under this section, the [borrower]

1    shall tender the property to the creditor," but, "[i]f the creditor does not take possession

2    of the property within 20 days after tender by the [borrower], ownership of the property

3    vests in the [borrower] without obligation on his part to pay for it." *Id.* These

4    "procedures prescribed" by Section 1635(b) "shall apply except when otherwise ordered

5    by a court." *Id.*

6    Although the Act originally extended the three-day rescission right until the creditor

7    delivered proper disclosures and notices, whenever that might be, Congress later limited

8    to three years the time within which a borrower may exercise the right to rescind even if

9    a creditor never delivers the disclosures required by the Act. *See* Act of Oct. 28, 1974,

10   Pub. L. No. 93-495, § 405, 88 Stat. 1500, 1517 (codified at 15 U.S.C. § 1635(f)).

11   Section 1635(f) thus provides that a borrower's "right of rescission shall expire three

12   years after the date of consummation of the transaction ... notwithstanding the fact that

13   the information ... required under this section or any other disclosures required under

14   [the Act] have not been delivered to the [borrower]." 15 U.S.C. § 1635(f).

15   Regulation Z, which implements the Act,2 confirms that, "[i]f the required notice or

16   material disclosures are not delivered, the right to rescind shall expire 3 years after

17   consummation." 12 C.F.R. § 226.23(a)(3). That Regulation further explains that, "[t]o

18   exercise the right to rescind, the consumer shall notify the creditor of the rescission by

19   mail, telegram, or other means of written communication." *Id.* § 226.23(a)(2).

21   <u>**2. The repercussions of an incompete (unfunded) transaction.**</u>

22   Courts recognize the date of signing as a binding loan contract as the *date of*

23   *consummation **when the lender is identifiable.*** The Court also cited to *__the Jackson v.__*

24   *__Grant, 890 F.2d case (9th Circuit 1989),__* and said: —the Ninth  Circuit held that under

25   California law a loan contract was not consummated when the borrower signed the

26   promissory note and deed of trust because the actual lender was not known at that time.

28   <u>**3. 15 U.S.C.A. §§ 1601[3] - Right To Rescision  under TILA provides:**</u>

---

**2 The Act originally vested the Federal Reserve Board with authority to promulgate regulations
implementing the Act. *See* Pub. L. No. 90-321, tit. I, §§ 103(b), 105, 82 Stat. 146,**
[3] **TILA.) (15 U.S.C.A. §§ 1601 et seq.) The Truth in Lending Act** (was enacted to assure that creditors provide
a meaningful disclosure of credit terms so that consumers will be able to compare more readily the various
credit terms available to them. <u>To this end, the credit transaction provisions of TILA require creditors to clearly
and conspicuously disclose certain key terms and costs before consummating a credit transaction.</u> The failure to

*Paragraph 23(d)(1)._1.Termination of security interest. Any security interest giving rise to the right of rescission becomes void when the consumer exercises the right of rescission.* In this case, material disclosures were not found among the loan documents at all and the Notice of the Right to Cancel was fatally defective. Therefore, Plaintiff was not provided the requisite disclosures in accordance with the statutory requirements; violating TILA and triggering rescission rights. The date of the transaction, see paragraph 1 section (1), (of Notice of Right to Cancel ) is not filled in, thereby violating TILA, triggering right to cancel.

Paragraph 23(b) Notice of right to rescind.

*3. Content. The notice must include all of the information outlined in section 226.23(b)(1)(i) through (v). The requirement in § 226.23(b) that the transaction be identified may be met by providing the date of the transaction.* If a loan is successfully rescinded, the consumer is entitled to a refund of all fees and charges, including finance charges, penalties, loan transaction fees, appraisal fees, closing costs, and, if a rescission lawsuit is filed, court costs and attorney's fees.

### 3. 6500 - Consumer Protection , *Section 226.23—Right of Rescission*

Paragraph 23(a)(3). 1. Rescission period. *The period within which the consumer may exercise the right to rescind runs for three business days from the last of three events:*

• *Consummation of the transaction.*

• *Delivery of all material disclosures.*

• *Delivery to the consumer of the required rescission notice.*

### 4. 15 U.S. Code § 1635 - Right of rescission

(a) Disclosure of obligor's right to rescind . Except as otherwise provided in this section, in the case of any consumer credit transaction …… the obligor "shall have the right to rescind the transaction until midnight of the third business day following …the consummation of the transaction or the delivery of the information and rescission forms required under this section" together with a statement containing the material disclosures required under this subchapter, whichever is later, …"by notifying the creditor, in accordance with regulations of the Bureau, of his intention to do so".

properly disclose required information, as was the case in *Shepeard v Quality Siding & Window Factory, Inc. (1990, DC Del) 730 F Supp 1295, 113 ALR Fed 727,* where a creditor who made disclosures on two separate documents at two separate times was found to have violated the TILA requirement that all required disclosures be grouped together, may result in rescission of the transaction, damages, or both.

(b) Return of money or property following rescission . When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation **of law, becomes void upon such a rescission**. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction.

(f) Time limit for exercise of right  "An obligor's right of rescission shall expire three years after the date of **consummation of** the transaction or upon the sale of the property, whichever occurs first",

**5.An overview of Title 15 U.S.C. § 1692g, titled "validation of debts,"** provides: (a) Notice of debt; contents Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing— and how he determined these fees?) This requirement was established by the case *Fields v. Wilber Law Firm, P.C., 383 F.3d 562 (7th Cir. 2004);* [3] Copy of the original signed loan agreement or credit card application. "For verification of a debt, generally it is considered sufficient for the debt collector to provide you with a statement that the amount being collected is the amount owed, along with any supporting documentation or records from the creditor. Verification requirement OF Debt Validation code 15 U.S.C. § 1692g(b). In the course of ordinary consumer collections, a recurring issue presents itself when the consumer tenders a written dispute concerning a debt and makes a written request for verification of the debt, pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692g(b). The intent of Congress,  when it required debt collectors to provide verification and that 'verification' means "documentary evidence of the obligor's indebtedness." Many experts believe by  evaluating of 15 U.S.C. § 1692g(b) 157,  that the verification requirement constitutes an entitlement to evidentiary proof of the amount of indebtedness that is the subject of collection. The FDCPA provides language with a focus on the "validation of debts" requirements and the case law regarding this provision. An analysis of this legislative history, sets forth two alternate interpretations of the "validation of

debts" requirement: the "*confirmation of facts*" and "*investigation*" interpretations. These two interpretations provide the conclusion that the verification of the debt requires documentary evidence of the exact amount of the debt and to whom it is owed.

## IV. INTRODUCTION

### 1.    General Issues

For the alleged lenders, and its assigns and successors, failure of full disclosure leads to recission and cancellation. The TILA statutes, **the Regulation Z and the recent Supreme Court Jesinoski** decision are very clear on the issue." Borrower" only needs to mail an notice of cancellation/rescission within 3 years of consummation of the funds. When the purported loan transaction was not completed, due to certain practices by alleged "Lenders", funds not distributed at closing or actual "lender" is unknown - – then the time for sending a Notice of Rescission extends beyond the 3 years to indefinitely.

### 2.    History of the Notices Mailed

The starting point is the Notice of Rescission and the fact that it is effective upon mailing. The first Notice was sent in end of August 211; final Notice of Cancellation /rescission was sent in September 12, 2011 . It is legally effective by operation of law and as expressly stated and ruled upon Congress in TILA, by the Federal Reserve in Reg Z, and by the US Supreme Court in Jesinoski.

The recent Notice of rescission , executed in January 2015, was intended to reaffirm the original Notice of cancellation of September 2011, and make the "purported "Lenders" successors satisfy the TILA non-disclosure requirement and file a federal lawsuit to oppose it. As of July 8, 2015 this has not happened yet. The purpose of this lawsuit is to enforce the Notice of Rescission mailed in 2011, followed by the Notice of Dispute and Debt Validation in January 2012 and enforce the latest affirmative Notice of Rescission of March 2015, because these Notices are effective by operation of law and set aside the foreclosure based entirely on a cancelled deed of trust and a note and on void assignments and other securities following the Cancellation notice.

1. The only prominent issue in this instant complaint is to enforce the timely notices of rescission , because the purported " Lender" and its successors never complied with Truth in Lending Act. Forcsncic audit of 2012 suggest there was only 1 Notice of the

1    Right to Cancel with the "loan" packet and 1 copy of TILA Notice, which was blank
2    unsigned by Yvanova in the consumer packet..
3    2. In January 2013 - upon discovery from NEW CENTIRY data CD file — there was a
4    proof the TILA Notice enclosure in the loan docs , the Yvanova signature was a
5    undeniable forgery. As a result of this noncompliance and the problematic
6    securitization scheme that followed 2006 – 2007 - the instruments used in all alleged
7    successor transactions are void and fraudulent due to forgery . The recipients of these
8    rescission notices refused to acknowledge the Notices – and simply refused to honor
9    the Quitclaim Deed mailed promptly .
10   3. The recent  Larry Jesinoski Supreme Court Ruling  of January 2015 upholding the
11   position of Rescission / Cancellation Is, was, has been, always will be valid. To put is
12   simply – the petitioner has mailed by certified USPS mail Notices Demanding full
13   disclosure. The statute says if a valid reply was not provided by the debt collector - nor
14   litigated- within 20 days – the debt collector is in default. 4. Failure of Full Disclosure
15   includes :
16   a). Source of funds loaned   b). Ownership of funds loaned  c). Providence of funds
17   loaned  d). Proof of funds on deposit before loan origination occurred  e). Failed to
18   provide Deposit Ticket for Note deposited at full Value.
19   A notice of cancellation / rescission was mailed via USPS Certified in 2011 and
20   affirmed in 2015. The Notice of Cancellation of September 2011 is in full effect. When
21   the rescission was mailed -  it is legally effective by operation of law and as expressly
22   stated and ruled upon Congress in TILA, by the Federal Reserve in Reg Z, and by the
23   US Supreme Court in Jesinoski. The statute was drafted such a crystal clear way that an
24   attorney is neither prudent nor necessary to send the notice of rescission or any lawsuit
25   to make the rescission effective .
26   5. The debt collector however, does have the obligation to file a lawsuit to dispute the
27   rescission and prove validity of the evidence of debt obligation is in their possession by
28   simply delivering the original instrument to the court. The TILA code does not suggest
29   a court approval of rescission by anyone. A legal action for seeking enforcement of the
30   rescission however - may be necessary.
31   6.  Once the notice of rescission is sent, it is subject to the very specific statutory
32   rescission schematics, which is to say that the purported loan deal is canceled and  the

purported "lender" or "creditor" is now under a statutory duty to (a) return the canceled note (b) file a satisfaction of mortgage (*Judicial State*) or a release and reconveyance (*non-judicial*) and (c) disgorge all money paid starting with the alleged origination of the loan and continuing through all the monthly payments.

7. If the purported lender has not complied with the statute within twenty (20) days they waive their defenses and are in violation of their statutory duties. Any other interpretation would mean that the rescission is NOT effective when filed, which is the exact opposite of what is expressly stated in TILA statutes, in Reg Z and the Jesinowski decision.

8. When the purported "lender" and its successors failed to comply with statute within 20 days, the lender & successors give up its right to make a claim for the money they allege loaned to borrower. I.e., the purported debt not only becomes unsecured, but it is eradicated starting with the rescission notice and ending with the failure of the lender to comply with the statute within the time periods prescribed by TILA. The notice of rescission acts the same as a court order nullifying the purported deed of trust and purported note. Not the purported debt. That is why a debt validation and evidence of the debt obligation are so important.

9. The defendant's will have the opportunity to provide to the district court the original instruments – note and deed of trust and any evidence of the debt obligation used to proceed into a purported "trustee sale". These have been consistently denied and all evidence obfuscated for over 4 years to the Superior court. Even if the "borrower" fails to take action to enforce the rescission within 1 year from the date of the notice, then he is still entitled to quiet title because the mortgage and note are void.

10. The only way to contest the Rescission by the purported "lender" and its successors is by lawsuit in District court. The lender & successors must defend an action filed by the borrower to either enforce the rescission or to get quiet title upon the basis that the rescission was not effective because of the statute of limitations and other factors. But they failed to file the lawsuit and missed their chance to use those "defenses" when they challenging the rescission within 20 days. Thus technically speaking, the rescission is effective from the time when it was completed and when mailed. The note and deed of trust are void. The loan contract is canceled.

1    Justice Scalia of the US Supreme Court has made it crystal clear that ANY attempt by

2    ANY judge or any appellate court to interpret the statute is wrong and unconstitutional

3    violating separation of powers. <u>No court has the right to interpret a statute that is</u>

4    <u>unambiguous</u>. But no ex post facto law will effect all the notices of rescission that have

5    been sent - and no Judge can overrule the US Supreme Court

6    **3. The importance of Supreme Court decision on Jesinoski v Countrywide**

7    This case arises from a mortgage lender's violation of the Truth in Lending Act and the

8    homeowners' obstructed attempt to exercise their right under the Act to rescind the

9    mortgage as a remedy for that lender's statutory violation. In the years preceding the

10    housing crisis of 2008, many mortgage lenders violated the Act's disclosure

11    requirements in tens of thousands of loan transactions. As a result, countless

12    homeowners were lured into oppressive mortgages on the basis of false, misleading, or

13    incomplete disclosures of material information about loans secured by their homes.

14    Yvanova did not receive complete disclosures. She purchased her home in 1999 and

15    refinanced her home mortgage with New Century Mortgage Corporation, Inc., in 2006,

16    by use of a Broker Emerald, but New Century failed to furnish Yvanova all the

17    information and disclosures required by the Act. The Act creates a "right to rescind" the

18    loan transaction within "three business days" of the delivery of all the required

19    disclosures. A borrower exercises that right simply "by notifying the creditor." 15

20    U.S.C. § 1635(a). The Act further provides that the right "shall expire three years" after

21    the closing of the transaction, even if all the required disclosures have not been

22    delivered. *Id.* § 1635(f). When Yvanova sought to exercise her rescission right under the

23    Act by sending the alleged creditors a written notice, those purported creditors refused

24    to honor Yvanova's right. When the Yvanova brought individual suit to enforce the

25    rescission among other causes , the courts below refused to recognize it.

26

27

28

29

### 4. Factual Background

On September 7, 1999, Yvanova purchased a land in Woodland Hills, by paying cash down payment and a Grant Deed was recorded in her name.

On July 8, 2006, petitioner Yvanova refinanced the mortgage on her primary residence in Woodland Hills, California by executing a promissory note for $473,000 with New Century Mortgage Corporation, Inc.( See EXHIBIT   )  At the closing of the transaction, the creditor did no provide the disclosures required by the Act, but in violation of the Act failed to include two copies of a Notice of Right to Cancel and of Truth in Lending Disclosure Statement. *See* Am. Compl. HI 19-20 (Dkt. No. 7); *see also* 12 C.F.R. § 226.23(b) ("[A] creditor shall deliver *two copies* of the notice of the right to rescind *to each consumer entitled to rescind*') (emphases added); *id.* § 226.17(d) ("If the transaction is rescindable ..., the disclosures shall be made *to each consumer who has the right to rescind."*) (emphasis added). The creditors never delivered the additional required disclosures.

In the meantime – in 2006 New Century has failed to fund the purported loan before closing, as it was conducting this activity on a massive scale – which it why it had 49 Conscent Orders from all Attorney Generals from across the United States issue a Cease and Desist Order in 2007 – to prevent New Century from continuing this conduct that hurts the public. This information is a Public Record at SEC. Soon after New Century was forced into Bankruptcy Chapter 11. It had purportedly "sold " the note to a third party, but this third party was unidentifiable nor it was on public record. Which makes its purported loan transaction incomplete, without identified party to sign the contract and this way the purported loan was unconsummated.

Defects, or fraudulent acts, like distinct forgery of Yvanova signature of on the TILA Notices of the origination docs appeared in January 2013, delivered from a data file by New Century Liquidating Trust, during a discovery for another case in state court..

On September 2, 2011, within the three-year limitation period set by Section 1635(f), from te consummation of the "transaction , Yvanova exercised her right to cancel /rescind the transaction by sending written notice of cancelation / rescission to

respondents. *Id.* In October, 2011, and November - respondent Ocwen Loan Servicing replied to the Yvanova with a generic letter, refusing to acknowledge the rescission. *Id.* No other interested party responded to Yvanova Notice of Mistake followed by Notice of Cancellation . . Neither Deustche Bank, nor any other party( *See* Letter by Ocwen)). The creditors subsequently failed to take, within 20 days of receipt of the notice of rescission, any of the steps required by Section 1635(b) to reflect the termination of the security interest in the Yvanova home. .

In December 2011, 4 months after the first Notice of Cancellation/Rescission was mailed out , an Assignment was recorded, purporting to state that New Century Mortgage Corporation, despite it liquidated status, somehow "assigns" all its interest and title as a Beneficiary to Deutche Bank Trust Company in 2011 for the RMBS trust of January 2007.

January 17, 2012, Yvanova mailed yet another Notice of Demand for full disclosure of the origin of the funds, source of the funds, ownership of funds purportedy loaned, proof of funds on deposit before purported loan origination occurred - title Notice Of Dispute and In response to Yvanova's Notice – on January 31 2012 years of , she received a Notice of Default by a party, claiming to be a trustee , but without any valid Substitution of Trustee to prove it had actually the power of sale vested in them to commence foreclosure..

## V. CLARITY IN CIRCUIT COURTS ON TILA ISSUES

*Tenth Circuit.* In *Rosenfield v. HSBC Bank, USA,* 681 F.3d 1172 (10th Cir. 2012), the Tenth Circuit joined the Ninth Circuit in holding that "the mere invocation of the right to rescission via a written letter, without more, is not enough to preserve a court's ability to effectuate (or recognize) a rescission claim after the three-year period has run." *Id.* at 1182. Like the Ninth Circuit in *McOmie-Gray,* the Tenth Circuit "believe [d] that *Beach* [was] dispositive of the instant question" and that "the Supreme Court has definitively foreclosed — through the implicit instruction of *Beach* — any argument that a consumer may exercise her right to rescind" by notifying the creditor of his intention to rescind. *Id.*

1   In the Tenth Circuit's view, the homeowner's "position is not consistent with the effect of

2   a strict repose period - which *Beach* held that [Section] 1635(f) establishes *in this context -*

3   one that operates to *completely* extinguish the right claimed *after it lapses." Id.*

4   The Tenth Circuit disregarded the Consumer Financial Protection Bureau's ("Bureau")

5   interpretation of the statute and of Regulation Z, advanced in an *amicus* brief, that a

6   borrower need not file suit to exercise the right to rescind, again on the basis of the

7   perceived implications of *Beach.* According to that court, "part and parcel of the Court's

8   vision of repose was the manner in which a rescission must be asserted during the repose

9   period - that is, by invoking the power of the courts through litigation." *Id.* at 1186 n.10

10  (citing *Beach*, 523 U.S. at 415-16). To hold otherwise, the court supposed, "could conflict

11  with the Court's conception of repose under [the Act], in that it would effectively create

12  commercial uncertainty." *Id.* On this policy basis, the court rejected the

13  *Eighth Circuit.* In *Keiran v. Home Capital, Inc.,* the Eighth Circuit surveyed the split

14  among its sister circuits before joining the Ninth and Tenth Circuits in "hold[ing] that a

15  plaintiff seeking rescission must file suit, as opposed to merely giving the bank notice,

16  within three years in order to preserve th[e] right [to rescind] under [Section] 1635(f)."

17  720 F.3d at 726-28. The court "[e]xtrapolat[ed] from *Beach'* to infer that, "to accomplish

18  rescission within the meaning of [Section] 1635(f), the [borrower] must file a rescission

19  action in court." *Id.* at 728. The court further disregarded the Bureau's interpretation of

20  Regulation Z, suggesting that "while Regulation Z sets forth one of the things [a

21  borrower] must do to rescind the loan - give written notice to the bank - it does not set

22  forth the entirety of the things necessary to accomplish rescission." *Id.* As a result, the

23  court felt free to impose the additional requirement that the borrower file suit within three

24  years. *Id.*

25

26  Judge Murphy dissented, explaining that "[t]he majority decision is contrary to the plain

27  language of [the Act], the congressional intent behind it, and the position of the agency

28  responsible for enforcing it." *Id.* at 731 (Murphy, J., concurring in part and dissenting in

29  part). She recognized that "[n]owhere in [the Act] is there any requirement that a

consumer must file a lawsuit in order to exercise a right of rescission." *Id.; see id.* at 733 ("[The Act] contains no language even hinting that a lawsuit is required to exercise the right of rescission."). Judge Murphy further explained that "[t]he majority ['s] suggestion] that *Beach* . .. compels a different interpretation of the statute ... is puzzling," because "in *Beach* the homeowners had unquestionably not exercised their right of rescission within three years, either by providing the statutory notice or by filing a lawsuit as the majority advocates." *Id.* at 731. Accordingly, she understood that "*Beach* provides no answer to the question in this case." *Id.* at 732. For these reasons, she properly concluded that "[t]he plain language of [the Act], its implementing regulations, and its supporting policy rationale all support reading [Section] 1635 to mean what it says: that rescission is exercised when a consumer provides written notice to the lender." *Id.* at 736.

## 1. Strong Evidence Suggest That Plaintiff Yvanova Signature On TILA Disclosure documents And The Cancellation Notices of 2006 are Pure Forgery.

The copies provided with the Yvanova consumer loan docs are dramaticaly different from the ones provided by NCMC digital file from the collateral. Discrepancies are apparent and provide irrefutable merit supporting the rescission.
Upon simple investigation – it is apparent that these sigatrires are forgery by another. These signatures are not by Plaintiff. ( See Exhibit D2)

## 2. Section 1635's Plain Text Establishes That Notice To A Creditor Is Sufficient To Exercise The Right To Rescind

The text of Section 1635(a) both creates a right of rescission and specifies the method of its exercise. The statute indisputably provides that the borrower "shall have the right to rescind the transaction." 15 U.S.C. § 1635(a). The statute further details the manner in which that right may be exercised by specifying that the borrower shall have the right to rescind "until midnight of the third business day" after the closing or the delivery of proper disclosures "by notifying the creditor, in accordance with regulations of the

1   Bureau, of his intention to do so." *Id.* The clear meaning of this statutory text is that a bor-
2   rower exercises his "right to rescind" a transaction "by notifying the creditor." *Id.*
3   Section 1635(f)'s text confirms that interpretation. That section creates a "time limit for
4   [the] exercise of [the] right," *id.* § 1635(f), but does not restrict the manner in which that
5   right may be exercised within that time limit. As this Court recognized in *Beach,* Section
6   1635(f) "says nothing in terms of bringing an action but instead provides that the 'right of
7   rescission [under the Act] shall expire' at the end of the time period." 523 U.S. at 417. By
8   addressing the "right's duration," *id.,* Section 1635(f) is simply silent regarding what a
9   borrower must do within the time limit it establishes in order to exercise that right.
10   Beyond Section 1635(a)'s affirmative statement that a borrower exercises his right to
11   rescind by "notifying the creditor" and Section 1635(f)'s notable silence on the issue,
12   neither section gives any indication of a further requirement that the borrower must sue
13   within the three-year time limit. Indeed, neither section even mentions a court or legal
14   proceedings. *See Sherzer*, 707 F.3d at 260 ("[T]he absence of any reference to causes of
15   action or the commencement of suits in [Section] 1635 also suggests that rescission may
16   be accomplished without a formal court filing."); *Gilbert,* 678 F.3d at 277 ("Simply stated,
17   neither [Section] 1635(f) nor Regulation Z says anything about the filing of a lawsuit, and
18   we refuse to graft such a requirement upon them."); *see also Keiran,* 720 F.3d at 728
19   ("Regulation Z says nothing about filing suit.").

20

21   **3.  The Structure And Purpose Of The Truth In Lending Act Confirm That Notice**
22   **Alone Is Sufficient To Exercise The Right To Rescind**

23   Congress designed the Act to effectuate rescission upon a borrower's notifying creditors
24   without relying on the intervention of the courts. As an initial matter, there is no dispute
25   that a borrower has an unconditional right to rescind under Section 1635(a) for three days
26   after the closing of the transaction. No court has suggested that a borrower must file a
27   lawsuit within three days to exercise that unconditional right. And it makes no sense to
28   interpret that unconditional right to rescind as requiring only notice while interpreting the
29   extended right to rescind, which is created by the very same clause in the very same

1  sentence of Section 1635(a), as requiring the filing of a lawsuit. See *Sherzer*, 707 F.3d at

2  264. Such an incongruous interpretation of Section 1635(a) is unsupportable.

3  Moreover, Section 1635(b) establishes procedures to unwind the transaction "when [a

4  borrower] exercises his right to rescind under [Section 1635(a)]," without mentioning or

5  requiring the involvement of a court. 15 U.S.C. § 1635(b). Those procedures are triggered

6  by the borrower "exercis[ing] his right" under Section 1635(a); that is, by "notifying the

7  creditor." "When" the borrower "exercises his right," immediately and automatically he

8  "is not liable for any finance or other charge." *Id.; see Williams*, 968 F.2d at 1140; *Semar*

9  *v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 705-06 (9th Cir. 1986). Moreover,

10  **"upon such a rescission" that a borrower exercises by notifying his creditor, "any**

11  **security interest ... becomes void."** 15 U.S.C. § 1635(b).

12

13  **4.  Regulation Z Removes All Doubt That Written Notice Is Sufficient To Exercise**

14  **The Right To Rescind**

15  Regulation Z resolves any remaining ambiguity regarding the interpretation of the Act in

16  favor of the sufficiency of written notice. That regulation specifies that, "[t]o exercise the

17  right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram

18  or other means of written communication." 12 C.F.R. § 226.23(a)(2). The Bureau's inter-

19  pretation of the Act in Regulation Z, which makes clear that notifying a creditor is

20  sufficient to exercise the right to rescind, is due deference. *See Anderson Bros. Ford v.*

21  *Valencia*, 452 U.S. 205, 219 (1981) ("[A]bsent some obvious repugnance to the statute,

22  the [Bureau's] regulation implementing [the Truth in Lending Act] should be accepted by

23  the courts."). Because the text of Section 1635, which does not even mention a court

24  proceeding, does not clearly preclude the Bureau's interpretation promulgated in

25  Regulation Z, that interpretation of the statute is entitled to deference from this Court.

26  The Bureau has reiterated in numerous *amicus* briefs before the courts of appeals its view

27  that a borrower need *only* notify a creditor to exercise the \

28  right to rescind. *See, e.g.*, Brief of the Consumer Financial Protection Bureau as Amicus

29  Curiae in Support of Plaintiff-Appellant and Reversal, *Rosenfield, supra*, No. 10-1442

1   (filed Mar. 26, 2012), 2012 WL 1074082. There, the Bureau confirmed that it interprets

2   Section 1635 to require only notice to the creditor to exercise the right to rescind and that

3   "[c]onsumers are not required also to sue their lender within the three-year period

4   provided under [Section] 1635(f)." *Id.* at *14. The Bureau's interpretation in an *amicus*

5   brief of its own regulations is itself entitled to deference. *See Chase Bank USA, N.A. v.*

6   *McCoy,* 131 S. Ct. 871, 880 (2011) ("[W]e find Regulation Z ambiguous as to the

7   question presented, and must therefore look to the [Bureau's] own interpretation of the

8   regulation for guidance in deciding this case.") (citation omitted); *Auer v. Robbins,* 519

9   U.S. 452, 461 (1997) (holding an agency's interpretation of its own regulation is

10  "controlling unless plainly erroneous or inconsistent with the regulation") (internal

11  quotation marks omitted). Accordingly, the Court should accept the Bureau's

12  interpretation of Section 1635 and Regulation Z to hold that notice to a creditor is

13  sufficient to exercise the right to rescind.

14  Accordingly, because the homeowner in *Beach* had not attempted to exercise his right to

15  rescind - by suit, by notifying the creditor, or by any other means - within the three-year

16  period of Section 1635(f), that right was extinguished when that limitations period

17  expired. *Id.* That holding has no bearing on the question here. The Eighth Circuit failed to

18  apprehend that the Jesinoskis do not seek to exercise an expired rescission right by filing

19  their suit, as the homeowner in *Beach* had attempted to do by asserting an expired

20  rescission right as an affirmative defense in a foreclosure action. Rather, as the Third,

21  Fourth, and Eleventh Circuits recognize, the Jesinoskis already exercised their right within

22  the three-year limitations period of Section 1635(f) by notifying their creditors, in

23  accordance with the requirements of Section 1635(a).

24  This Court's decision in *Beach* in no way questions the legitimacy of that manner of

25  exercising the right to rescind. As the Third Circuit explained in *Sherzer,* "nowhere in

26  *Beach* does the Court address *how* [a borrower] must exercise his right of rescission

27  within that three-year period." 707 F.3d at 262. Rather, "[t]he most that can be gleaned

28  from [this Court's] oft-quoted statement" in *Beach* that the Act "permits no federal right to

29  rescind, defensively or otherwise, after the 3-year period of [Section] 1635(f) has run,"

523 U.S. at 419, is the unremarkable conclusion that, "however the right of rescission is to be exercised, it must be done within three years." *Sherzer*, 707 F.3d at 263. The Eighth Circuit, along with the Sixth, Ninth, and Tenth Circuits, were therefore mistaken to rely upon *Beach* as warrant to ignore the plain meaning of Section 1635 and Regulation Z. As the agency responsible for administering the Act has recognized, "[t]he mortgage market is the single largest market for consumer financial products and services in the United States." Final Rule, *Mortgage Servicing Rules Under the Truth in Lending Act (Regulation Z),* 78 Fed. Reg. 10,902, 10,905 (Feb. 14, 2013). In September 2013, more than $13 trillion in mortgage debt remained outstanding in the domestic economy. *See* Board of Governors of the Federal Reserve System, *Mortgage Debt Outstanding* (updated Sept. 25, 2013), *at*

*http://www.federalreserve.gov/econresdata/releases/mortoutstand/current.htm*
 (last visited Dec. 4, 2013).

That massive market has been beset by defaults and foreclosures. *See* 78 Fed. Reg. at 10,906 ("[m]ortgage loan delinquency rates nearly doubled between 2007 and 2009," reaching nearly 10% in 2009); Jeff Sovern, *Preventing Future Economic Crises Through Consumer Protection Law or How the Truth in Lending Act Failed the Subprime Borrowers*, 71 Ohio St. L.J. 761, 764 (2010) (estimating 2.4 million foreclosures in 2009 and as many as 13 million by 2014). Rampant violations of the Act preceded the housing crisis, vastly increasing the number of borrowers eligible for rescission under the Act. *See* Lea Krivinskas Shepard, *It's All About the Principal: Preserving Consumers' Right of Rescission Under the Truth in Lending Act,* 89 N.C. L. Rev. 171, 175 (2010) (stating that "TILA errors seemed surprisingly common, particularly during the early years of the mortgage bubble," and reporting that forensic auditing revealed "actionable mistakes in borrowers' disclosure documents ... in as many as eighty percent of loans"). Clarification of the procedure that borrowers must follow to exercise their rights under the Act, especially when the majority of circuits would direct hundreds of thousands of rescission actions into federal court, warrants this Court's immediate attention.

For the purposes of the present motion, the Court assumes without deciding that Plaintiffs have pled a plausible claim that they did not receive the required documents at the closing." *with Sobieniak v. BAC Home Loans Servicing, 12.5* evidence that **their signatures on the cancellation notices and TILA disclosure** do not mean what they say," and "a bald assertion . . . years later" to the contrary "is not sufficient to overcome the presumption" that they received the required disclosures), *aff'd sub nom. Keiran v. Home Capital, Inc.,* 720 F.3d 721 (8th Cir. 2013), *and Keiran v. Home Capital, Inc.,* Civil No. 10-4418 .

## VI. TILA VIOLATIONS AND IRREGULARITIES REPORT
## IN PLAINTIFFS DOCS by AUDITOR ROUGEUX

**1. Lender failed to provide that the disclosures were clearly and conspicuously provided in a form that the consumer may keep.**

The Truth in Lending Act (TILA) (15 U.S.C.A. §§ 1601 et seq.) was enacted to assure that creditors provide a meaningful disclosure of credit terms so that consumers will be able to compare more readily the various credit terms available to them and avoid the uninformed use of credit, and to protect consumers against inaccurate and unfair credit billing and credit card practices. To this end, the credit transaction provisions of TILA require creditors to clearly and conspicuously disclose certain key terms and costs before consummating a credit transaction. The failure to properly disclose required information, as was the case in Shepeard v Quality Siding & Window Factory, Inc. (1990, DC Del) 730 F Supp 1295, 113 ALR Fed 727, where a creditor who made disclosures on two separate documents at two separate times was found to have violated the TILA requirement that all required disclosures be grouped together, may result in rescission of the transaction, damages, or both.

2. Lender failed to provide that consumer was provided opportunity to possess, read and understand the documents in their entirety before becoming obligated. Official Staff Commentary, Section 226.17 (b)-3.

3. Lender failed to provide the borrower a completed servicing disclosure statement at the time of application or, if the application     was not face-to-face, within the

1    statutorily required business days of the application. (24 CFR 3500.21(b) and

2    Appendix MS-1). 3500.21 - Mortgage servicing transfers.

3    a.  (a) Definitions. As used in this section: Master servicer means   the owner of the

4    right to perform servicing, which may actually   perform the servicing itself or may do

5    so through a subservicer.

6    b.  Mortgage servicing loan means a federally related mortgage   loan, as that term is

7    defined in 3500.2, subject to the exemptions   in 3500.5, when the mortgage loan is

8    secured by a first lien. The  definition does not include subordinate lien loans or open-

9    end   lines of credit (home equity plans) covered by the Truth in   Lending Act and

10   Regulation Z, including open-end lines of credit  secured by a first lien.

11   c.  Subservicer means a servicer who does not own the right to   perform servicing, but

12   who does so on behalf of the master   servicer.

13   d. Transferee servicer means a servicer who obtains or who will   obtain the right to

14   perform servicing functions pursuant to an   agreement or understanding.

15   e.  Transferor servicer means a servicer, including a table funding   mortgage broker or

16   dealer on a first lien dealer loan, who   transfers or will transfer the right to perform

17   servicing functions  pursuant to an agreement or understanding.

18   f.    (b)  Servicing  Disclosure  Statement  and  Applicant         Acknowledgement;

19   requirements. (1) At the time an application    for a mortgage servicing loan is

20   submitted, or within the required   number of business days after submission of the

21   application, the    lender, mortgage broker who anticipates using table funding, or

22   dealer who anticipates a first lien dealer loan shall provide to  each person who applies

23   for such a loan a Servicing Disclosure   Statement.

24   g. This requirement shall not apply when the application for credit   is turned down

25   within three business days after receipt of the   application. The specific language of

26   the Servicing Disclosure   Statement is not required to be used, but the Servicing

27   Disclosure Statement must include the information set out in   paragraph (b)(3) of this

1    section, including the statement of the   borrower's rights in connection with complaint

2    resolution.

3  h. The Servicing Disclosure Statement must contain the following   information, except

4    as provided in paragraph (b)(3)(ii) of this     section: (i) Whether the servicing of the

5    loan may be assigned,   sold or transferred to any other person at any time while the

6    loan   is outstanding. If the lender, table funding mortgage broker, or   dealer in a first

7    lien dealer loan does not engage in the servicing   of any mortgage servicing loans, the

8    disclosure may consist of a   statement to the effect that there is a current intention to

9    assign,   sell, or transfer servicing of the loan.

10  4. Lender failed to obtain a written acknowledgement of the servicing disclosure from

11    the borrower. (24 CFR 3500.21(c)).

12  a. (2) The Applicant's Acknowledgement portion of the Servicing Disclosure Statement

13    in the format stated is mandatory. Additional lines may be added to accommodate

14    more than two applicants.

15  b. A written acknowledgement that the applicant (and any co-applicant) has/have read

16    and understood the disclosure, and understand that the disclosure is a required part of

17    the mortgage application. This acknowledgement shall be evidenced by the signature

18    of the applicant and any co-applicant. Each applicant or co-applicant must sign an

19    Acknowledgement of receipt of the Servicing Disclosure Statement before settlement.

20  5. Lender, as transferor, failed to notify the borrower at least 15 days in advance of

21    transfer with the notice of transfer. (24 CFR 3500.21(d)(2)).

22  6. Lender, as transferee failed to notify the borrower within 15 days after the effective

23    date of the transfer. (24 CFR 3500.21(d)(2)).

24  7. Lender failed to include a statement that variable rate disclosures were provided

25    earlier. [226.18(f)(2)(ii)].

26  8. Lender failed to proved disclosures either at time of application or before consumer

27    paid any nonrefundable fee or, if the application was received over the phone failed to

1   mail within three business days following receipt of the application. [226.19(b) &

2   footnote 45b].

3   9. Lender failed to provide the booklet entitled —Consumer Handbook on ARMs,l or a

4   suitable substitute. [226.19(b)(1)].

5   10. Lender failed to include a statement that consumer should ask for the current margin

6   and interest rate. [226.19(b)(2)(iv)].

7   11. Lender failed to disclose the fact that interest rate is discounted, if applicable, and a

8   statement that the consumer should ask about the amount of discount.

9   [226.19(b)(2)(v)].

10  a. Timing. A creditor must give the disclosures required under this  section at the time

11  an application form is provided or before the  consumer pays a non-refundable fee,

12  whichever is earlier.

13  b. If a consumer who has received program disclosures   subsequently expresses an

14  interest in other available variable  rate programs subject to § 226.19(b)(2), or the

15  creditor and   consumer decide on a program for which the consumer has not

16  received disclosures, the creditor must provide appropriate   disclosures as soon as

17  reasonably possible.

18  12.  Lender failed to provide an historical example of the maximum interest rate and

19  payment. [226.19(b)(2)(viii)].

20  13.  Lender failed to provide an explanation of how the loan payment can be calculated

21  based on example. [226.19(b)(2)(ix)].

22  14.  Lender failed to include a statement that disclosures for other variable rate loan

23  programs are available. [226.19(b)(2)(xii).

24  15. Lender failed to furnish disclosures before consummation. [226.17(b)].

25  a. A creditor complies with the Truth in Lending Act (TILA) disclosure requirements

26  when the creditor presents a credit contract containing the TILA disclosures to a

27  consumer before consummation of the credit transaction. Truth in Lending Act, §

128(b)(1), 15 U.S.C.A. § 1638(b); 12 C.F.R. § 226.17. Queen v. Lynch Jewelers, LLC, 55 P.3d 914 (Kan. Ct. App. 2002).

b. Plaintiff in action under Truth in Lending Act (TILA) need not prove that he or she suffered actual monetary damages in order to recover statutory damages and attorneys' fees; nor is it necessary to show that consumer was actually misled or deceived by ambiguous credit term in order to prevail. Truth in Lending Act, § 130, 15 U.S.C.A. § 1640. Noel v. Fleet Finance, Inc., 971 F. Supp. 1102 (E.D. Mich. 1997).

16. Lender failed to provide that the finance charge was disclosed and accurate. [226.4, 226.18(d) & footnote 41].

17. Lender failed to provide that the APR was disclosed and accurate. [226.18(e), footnote 42 & 226.22(a)].

18. Lender failed to provide that a payment schedule of amount, timing and number of payments is provided and accurate. [226.18(g)].

19. Lender failed to provide that the total of payments was provided and accurate. [226.18(h)].

20. Lender failed to provide timely early disclosures for residential mortgage transactions subject to RESPA. [226.19(a)(1)].

21. Lender failed to provide timely early disclosures for residential mortgage transactions subject to RESPA. [226.19(a)(1)

## VII. STANDING

### 1. Failure to prove standing

A failure to prove standing is the widespread failure of securitization industry participants to adhere to their own agreements . The main issue here is the parties trying to foreclose failed to present a document trail that the bankruptcy trustee considers convincing or wholly persuasive. In two cases involving GMAC, the other with BAC as the servicer, both involve a foreclosure mill, the Baum Law Firm, which had been sanctioned and fined for submitting pleadings with documentation defects.

—The state court judge called the Baum Firm's actions _reprehensible.'l The underlying issue is plain, a failure to prove standing, which is one of the fundamental purposes of consumers' SEC audits. In law, standing or *locus standi* is the term for the ability of a party to demonstrate to the court sufficient connection to and harm from the law or action challenged to support that party's participation in the case. In the United States, the current doctrine is that a person cannot bring a suit challenging the constitutionality of a law unless the plaintiff can demonstrate that the plaintiff is (or will *imminently* be) harmed by the law. Otherwise, the court will rule that the plaintiff "lacks standing" to bring the suit, and will dismiss the case without considering the merits of the claim of unconstitutionality. To have a court declare a law unconstitutional, there must be a valid reason for the lawsuit. The party suing must have something to lose in order to sue unless it has automatic standing by action of law.

**Is litigant entitled**....? In United States law, the Supreme Court of the United States has stated, "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues".[10]

There are a number of requirements that a plaintiff must establish to have standing before a federal court. Some are based on the case or controversy requirement of the judicial power of Article Three of the United States Constitution, § 2, cl.1. As stated there, "The Judicial Power shall extend to all Cases . . .[and] to Controversies . . ." The requirement that a plaintiff have standing to sue is a limit on the role of the judiciary and the law of Article III standing is built on the idea of separation of powers.

[11] Federal courts may exercise power only "in the last resort, and as a necessity".[12] The American doctrine of standing is assumed as having begun with the case of *Frothingham v.Mellon*, 262 U.S. 447 (1923). But, legal standing truly rests its first prudential origins in *Fairchild v. Hughes*, (1922) which was authored by Justice Brandeis. In *Fairchild*, a citizen sued the Secretary of State and the Attorney

General to challenge the procedures by which the Nineteenth Amendment was ratified. Prior to it the doctrine was that all persons had a right to pursue a private prosecution of a public right.[13] Since then the doctrine has been embedded in judicial rules and some statutes.

**2.Standing requirements There are three standing requirements**
1. Injury: The plaintiff must have suffered or imminently will suffer injury—an invasion of a legally protected interest that is concrete and particularized. The injury must be actual or imminent, distinct and palpable, not abstract. This injury could be economic as well as non-economic. 2. Causation: There must be a causal connection between the injury and the conduct complained of, so that the injury is fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party who is not before the court.[14] 3. Redressability: It must be likely, as opposed to merely speculative, that a favorable court decision will redress the injury.[15]

State law State law on standing differs substantially from federal law and varies considerably from state to state.

*California* On December 29, 2009, the California Court of Appeal for the Sixth District ruled that California Code of Civil Procedure Section 367 cannot be read as imposing a federal-style standing doctrine on California's code pleading system of civil procedure. In California, the fundamental inquiry is *always* whether the plaintiff has sufficiently pleaded a cause of action, not whether the plaintiff has some entitlement to judicial action separate from proof of the substantive merits of the claim advanced. The court acknowledged that the word "standing" is often sloppily used to refer to what is really *jus tertii*, and held that *jus tertii* in state law is not the same thing as the federal standing doctrine.

### 3. *Jus tertii* (Latin, —*third party rights*‖)

1    *Jus tertii* (Latin, —*third party rights*l)  is the legal classification for an argument
2    made by a third party (as opposed to the legal title holder) which attempts to justify
3    entitlement to possessory rights based on the showing of legal title in another person.
4    By showing legitimate title in another person, *jus tertii* arguments imply that the
5    present possessor's interest is illegitimate or that the present possessor is a thief. The
6    principle is sometimes used to allow one person to enforce or test the constitutional
7    rights of another, which usually can't be done due to lack of standing. This is only
8    possible for fundamental rights, where there is a close connection between the person
9    whose rights are violated and the person wishing to enforce them, and the
10   constitutional right being enforced is a fundamental right. *See, e.g., Singleton v. Wulff*
11   *Et Al., 96 S. Ct. 2868, 428 U.S. 106 (U.S. 1976)*

## VIII.LEGAL THEORY BEHIND REG Z
### 1.  Regulation Z, 226.17 (c)
14   More times than not Truth in Lending disclosures involve critical errors.
15   Investigation must start with the loan agreement and consider Regulation Z:
16   §226.17(c)(1).
17   What §226.17(c)(1) says is that the disclosures must reflect the terms of the legal
18   agreement. A key test of the accuracy of disclosures is whether they reflect the legal
19   agreement.
20   The closely related contract principle is that you cannot charge it if you didn't disclose
21   it, even if a loan contract provides for certain fees or interest calculations, you cannot
22   exercise them if they conflict with the TIL disclosure that you gave to the customer
23   when you closed the loan.
24   But §226.17(c)(1) has a dark side and nowhere is it more evident than in the recently
25   popular "premium rate adjustable rate mortgage." A premium rate ARM is a variable
26   rate loan for which the first time period - anywhere from one to five years - is based on
27   a premium rate which is actually higher than the index plus margin. After the premium
28   period, the loan reverts to traditional variable rate adjustments.

1  The payment streams for each rate cycle of the loan are often incorrect. Remember to
2  use all of the variable rate assumptions - rates will change based on the loan agreement
3  using the rates we know about at closing.
4  We amortize and approximate the correct figures and plug them into the APR software
5  program which often results in seriously under disclosed finance charges.
6  Here, audits suggest that the TIL disclosure violates Reg. Z, 226.17(c ) and finance
7  charges are under disclosed.

8

9                      **IX. MULTIPLE ASSIGNMENT  ISSUES**
10  **.1. It is impossible in any way to have two separate and concurrent transfers and**
11  **instruments that purport to  convey the same security.**
12  Notwithstanding the undeniable effectiveness of the Cancellation Notice sent promptly  in
13  September 12, 2011 It is also impossible to have the liquidated New Century[4] ( a non –
14  entity ) assign Yvanova note /funds in December 2011, to another non- entity , a  Trust, (
15  MSAC-2007 HE-1)  that has already been closed  since January 2007.
16  **2. General Facts  of the title**
17  On September 7, 1999 Yvanova purchased a property located at 22054 Crespi Street,
18  Woodland Hills in California.  On July 8, 2006 , Yvanova refinanced a purported loan
19  from with Emerald Mortgage Inc  with New Century Mortgage Corporation. ("New
20  Century"), for $473,000 in exchange for a promissory note. (See Exhbit  C4.) The note
21  was secured by a Deed of  Trust  that Yvanova executed in favor of New Century, as
22  "lender".  Shortly after the execution , on July 8. 2006  the Note was sold as paper to a
23  third party on August 25, 2006.(See Exhibit D1 )  Since this date – New Century plays the
24  dual  role of a "Lender" and "Master Servicer".  The mortgage's security consisted of Deed
25  of Trust , collateralized  by a property owned by Yvanova located at 22054 Crespi Street,

_____

[4] A US  bankruptcy liquidation trustee, Alan Jacobs,  was appointed as the legal successor to New Century Mortgage. August 1, 2008, is the effective date of the New Century Liquidating Trust in joint bankruptcy. (In re New Century TRS H0/dings, Inc, v. New Century Liquidating Trust, 407 B.R. 576 (2009) at 585.)

1   Woodland Hills in California. (the "Property"). Yvanova's promissory note and mortgage
2   were the subject to more than three assignments. On December 11, 2006, New Century, as
3   a Master Servicer, assigned the mortgage to Saxon Mortgage Servicing Inc.( the "*First*
4   *Assignment")* ( Se Exhibit D3. Page 3)
5   Since a purported sale to Morgan Stanley  - a second assignment on January  1 , 2007 to
6   Deutsche Bank Trust Company Americas, as Trustee for  MSAC Trust 2007 HE-1
7   ("Deutsche Bank") (the "*Second Assignment")* for which there is no record found. *(Id.)* On
8   December 19 2011,  New Century , by OCWEN, assigns the mortgage to Deutsche Bank
9   Trust Company Americas, as Trustee for  MSAC  Trust 2007 HE-1  ("Deutsche Bank")
10  (the *"Third Assignment").*
11   "Deutche Bank"  by its Agent Ocwen/Western, (wholly owned by Altisource), on behalf
12  of New Century,  initiated foreclosure proceedings in January 2012. On September 14,
13  2012,  Western (Deutsche Bank's Agent)  assigned the mortgage to THR California LLC
14  (the "Fourth Assignment" ) , on behalf of New Century , under the color of a "Trustee
15  Deed Upon Sale", where it "coneys" non-existet  interest and title during a staged
16  "auction" where in reality there were no real bidders and no real exchange of funds on
17  Augusrt 14, 2012 ( the day of the purported "trustee sale". *All of the Assignments,*
18  *including the fourth "assignment", which is in the form of a "Trustee Deed",  are void on*
19  *multiple grounds. Defendants cannot provide a proof to the contrary.*
20  This action is to enjoin the foreclosure proceedings and enjoin/set aside the alleged trustee
21  sale by alleging that the assignments of her mortgage are invalid. The validity of the
22  assignments  is challenged on multiple grounds. The documents executing the
23  assignments were "fraudulent and manufactured - the persons executing the assignments
24  were not employees, officers, or properly authorized agents of the entities for whom they
25  purported to act and that the signatures on the assignments are fraudulent and/or not
26  authentic.
27   New Century  did not complete the alleged funding transaction *New Century* did not
28  have the authority to assign the mortgage on December 11, 2006, the date of the purported
29  First Assignment  because  the alleged transaction  of the funding, prior to closing  was

never completed.( Se Exhibit D3 ). It did not have the right to be a "Beneficiary" or a "Lender", because the actual "lender" was never disclosed. *(See Exhibit D3)* .*New Century* did not have the authority to assign the mortgage on December 19, 2011, ( See Exhibit C5)  the date of the purported  "Third Assignment" because *they were liquidated at that time in addition to not being a "Beneficiary" nor a "Lender". Because New Century was under the  strict supervision by Trustee  Alan Jacobs, appointed by the US Bankruptcy Court at the time and currently, that Assignment was fraudulent on  more levels  than one. Due to the fact that all these assignments were void,  it comes as no surprise that the Trustee deed ( named here for  convenience  "Fourth Assignment")  is just as fraudulent and void, since Western had no authority not Power of Sale nor New Century  had any status as a Beneficiary after years being in liquidation.( See Exhibit C6)* "If this alleged loan was included in a loan pool ultimately transferred to a securitized trust, the mortgage had already been allegedly sold to a Sponsor/Seller and thus any assignment was invalid. Any assignment which would have been made on or [after] January 26, 2007.[,] was outside the time specified by any securitized trust which Saxon refers to as Deutsche Bank Trust Company as Trustee  for MSAC Trust 2007 HE-1." *(Id.)* The validity of any assignment  by New Century to Deutsche Bank Trust Company as Trustee  for MSAC Trust 2007 HE-1 is void because that Trust did not exist any more – it closed January 26,2007. The Trust closed on January 26, 2007, and that, therefore, no assignment to the RMBS trust was possible on December 19, 2011.( See Exhibit C5) As a result, the Third Assignment( 2011) was by a non-entity  that was liquidated  (New Century)  issued  to another  non-existent entity ( Closed RMBS Trust) and any subsequent assignments and security instruments following these are  also void. The  Defendants do not hold her mortgage and promissory note, and that Defendants lacked standing to foreclose on the mortgage or enforce the note for two major reasons – no standing and no valid security instruments . Plaintiff has standing to challenge the validity of the Deed of Trust  and the Note  post TILA Cancellation in addition to the  follow through Assignments , used to intiate  a fraudulent foreclosure and obtain a Writ of Possession. A standing "inquiry involves both

1  constitutional limitations on federal-court jurisdiction and prudential limitations on its

2  exercise. In both dimensions it is founded in concern about the proper—and properly

3  limited—role of the courts in a democratic society." *Warth* v. *Seldin,* 422 U.S. 490, 498

4  (1975) (internal citations omitted.); *see Osediacz v. Cranston,* 414 F.3d 136, 139 (1st Cir.

5  2005) ("[Standing to sue is an indispensable component of federal court jurisdiction.").

6  "'The constitutional core of standing requires that a plaintiff make a tripartite showing:

7  she must demonstrate that she has suffered an injury in fact, that her injury is fairly

8  traceable to the disputed conduct, and that the relief sought promises to redress the injury

9  sustained." *Osediacz,* 414 F.3d at 139 (citing *Lujan* v. *Defenders of Wildlife,* 504 U.S.

10  555, 560-61 (1992)).

11  In addition, prudential standing "ordinarily require[s] a plaintiff to show that his claim is

12  premised on his own legal rights (as opposed to those of a third party)[.]" *Pagan v.*

13  *Calderon,* 448 F.3d 16, 27 (1st Cir. 2006).

14  In the context of mortgage foreclosure cases, there are two recent cases that focus on the

15  legality and effect of MERS and a homeowner's standing to challenge a foreclosure. In

16  February 2013, as a matter of first impression, the First Circuit decided *Culhane* v. *Aurora*

17  *Loan Services of Nebraska* and, even more recently and as a complimentary follow-up

18  decision, *Woods v. Wells Far go Bank, N.A.* Both of these cases considered the

19  constitutional and prudential dimensions of standing in a mortgage foreclosure case, are

20  binding precedent on this Court.

21  The plaintiff in *Culhane,* much like  Plaintiff in Cosajay v MERS , focused her lawsuit on

22  the validity of the assignment of her mortgage. When the First Circuit considered the

23  "tripartite" showing of constitutional standing in that fact pattern, it handily found that

24  "the foreclosure of the plaintiffs house is unquestionably a concrete and particularized

25  injury to her[,]" "there is a direct causal connection between the challenged action [the

26  assignment] and the identified harm[,]" and "a determination that [defendant] lacked the

27  authority to foreclose would set the stage for redressing plaintiffs claimed injury."

28  *Culhane,* 708 F.3d at 289-90.

29  The same can be said for Ms. Cosajay's case - Defendants initiated foreclosure

proceedings on her home, there is the same connection between the assignment she challenges in her lawsuit and the foreclosure and if the Court determines that Defendants did not have the authority to foreclose, Ms. Cosajay's injuries can be redressed through the equitable relief and compensatory damages she seeks. Therefore, the Court finds that she has met the constitutional dimension of standing.

In considering whether a plaintiff premises her claims on her own legal rights justifying her standing to sue, *Culhane* considered whether she had to be a party or a third party beneficiary of the assignment . The First Circuit rejected that concept, holding that "*a nonparty mortgagor ... has standing to raise certain challenges to the assignment of her mortgage.*". While noting that its holding was "narrow," the First Circuit decided that privity of contract is not required in order to have standing to bring a lawsuit on a mortgage assignment action.

In February 2013 , the First Circuit had another opportunity to consider standing in *Woods* v. *Wells Fargo Bank, N.A.,* a mortgage foreclosure case where the district court below found that the plaintiff did not have standing based on a lack of privity. Discussing its previous holding in *Culhane,* the First Circuit rejected the district court's reasoning and reiterated that "*standing may be appropriate even where a mortgagor is not party to, nor beneficiary of, the challenged assignments.*", (citing *Culhane,* 708 F.3d at 289).

Defendants in Cosajay rely on *Brough v. Foley* to argue that a party does not have standing to assert rights under a contract to which it is not a party. ("The plaintiffs were, in substance, strangers to those transactions and were given no rights under the contract to challenge the transactions.") The First Circuit in *Culhane* "further circumscribed" its holding, finding standing when a plaintiffs challenge was limited to only "invalid, ineffective, or void" assignments, such as situations where "the assignor had nothing to assign or had no authority to make an assignment to a particular assignee." *Culhane,* 708 F.3d at 291. Conversely, the First Circuit held that "a mortgagor does not have standing to challenge shortcomings in an assignment that *render it merely voidable at the* election of one party but otherwise effective to pass legal title." *Id.*

**2. The First Circuit in *Woods* provided further examples of this "void" versus**

"voidable" distinction:

[Claims that merely assert procedural infirmities in the assignment of a mortgage, such as a failure to abide by the terms of a governing trust agreement, are barred for lack of standing. In contrast, standing exists for challenges that contend that the assigning *party never possessed legal title and, as a result, no valid transferable interest ever exchanged hands. In this latter case, the challenge is to the* "foreclosing entity's status qua mortgagee." *Woods,* No. 12-1942, 2013 WL 5543637, at *3 (internal citations omitted).

New Century could not have made the First Assignment to Deutsche Bank as Trustee on December 11,2006 because New Century no longer held the mortgage at that time – it was allegedly sold to Morgan. New Century could not have made the "Third Assignment" to Deutsche Bank as Trustee on December 19, 2011 because New Cetury no longer held the mortgage at that time either . This foreclosure is challenegd on the ground that it was void due to an invalid assignment to a non-existent entity. The First Circuit in *Culhane* concluded that homeowners have a "legally cognizable right" to protection against illegal foreclosures. Plaintiff will demonstrate "a concrete and particularized injury in fact, a causal connection that permits tracing the claimed injury to the defendant's actions, and a likelihood that prevailing in the action will afford some redress for the injury." *Antilles Cement Corp.* v. *Fortuno,* 670 F.3d 310, 317 (1st Cir. 2012) (*quoting* Weaver's Cove Energy, LLC v. R.I. Coastal Res. Mgmt. Council, *589 F.3d 458, 467 (1ˢᵗ* Cir. 2009)).

 Extreme and incongruous arguments that would allow Plaintiff no relief because she is not a party to the assignment are rejected by the First Circuit finding that a bar on standing based solely on whether plaintiff is a party to the assignment "paint[s] with too broad a brush." *Culhane,* 708 F.3d at 290. That position cannot be squared with the fact that the First Circuit recognized that a mortgagor has a "legally cognizable right" to ensure that a threatened foreclosure is legally conducted. *Culhane*, 708 F.3d at 290. *Culhane* reasoned that barring standing in all cases would unduly insulate assignments; mortgagors could not challenge the validity of assignments either as the defendant in a suit for judicial authorization or as the petitioner in a suit like the

present one..

The First Circuit has determined that, due to the particularities of mortgage foreclosure cases, requiring privity to an assignment "unduly insulate[s]" those assignments to the detriment of mortgagors asserting their legal rights. "There is no principled basis for employing standing doctrine as a sword to deprive mortgagors of legal protection conferred upon them under state law." *Culhane,* 708 F.3d at 291.

## X.CONCLUSION

The court should fine that the Notice of Cancellation /Rescission of September 2011 is sufficient and the Yvanova Note and its Deed of Trust  are rescinded , to prior July 8, 2006 status.   The following security instruments  derived from subsequent Assignments are extinguished and declared void  ab initio as a matter of law.  The Court should grant Plaintiff injunctive relief from the injurious foreclosure and recent eviction that was based on the void instruments rescinded in 201.

## XI.   PRAYER FOR RELIEF

Due to the voided Deed of Trust and Note, these  instruments are rescinded and are void by operation of  law. Leaving all  successor instruments for all purported transactions void *ab initio*. This  Court should find that the above TILA Notices were  timely , that the purported loan is rescinded and all assignments and other security instruments following are void and without any legal effect.

1.    Petitioner/Plaintiff demands full reconveyace of the said property by Quit claim Deed from the last successor to the purported transactions.

2.    Full recoupment of  all fees. Mortgage payments and charges since  July 2006 till present day.

3.    Treble damages  for the amount of the value of the Note.

4.    Establish the validity of  the  Yvanova  title on title property is the Grant Deed, and

1  the superiority of the US Land Patent Update.

2  5.   Injunctive relief to Yvanova as to all parties, Blackstone Invtation Homes aka THR

3  Calfornia LLC/LP - who are currenty holding the Yvanova property and moved to

4  physically remove her from her land, by means of using void and counterfeit

5  assignments and trustee deed.

6  6.   Restore the land in its entirety to Yvanova, as described in the Fee Simple together

7  with all appurtenances located at 22054 Crespi street, Woodland Hills in California, a

8  Grantee of an uncontested Fee Simple of 1999.

9  Respectfully dated on /7  2015   and signed,

10

11                          Tsvetana Yvanova

12

13                  **XII. DECLARATION**

14  I, Tsvetana Yvanova, and the Plaintiff in the current Complaint and I swear under penalty of

15  perjury that the above statements and facts are true to the best of my knowledhe and

16  evidentiary and factual research.

17              Signed:

18

19          Tsvetana Yvanova, Plaintiff

20          Without Prejudice/All Rights Reserved

21

22

23

24

25

26

27

28

29

# XIII. EXHIBITS TO TILA COMPLAINT

**Exhibits A**
Exhibit AA-Jesinoski
Exhibit A1 Notc Mistake
Exhibit A2 Notc Cancellation
Exhibit A3 Debt Vallidation
Exhibit AA1-US Land Patent

**Exhibits B**
Exhibit B1 TILA1 Rescission
Exhibit B2 TILA2 Rescission
Exhibit B3 TILA3 Rescission
Exhibit B4 TILA4 Rescission

**Exhibits C**
Exhibit C1 GD Authenticated
Exhibit C2 Fidelity Title Policy
Exhibit C3 Deed of Trust
Exhibit C4 Note
Exhibit C5 Assignment 2011
Exhibit C6 Truste Deed 2012

**Exhibits D**
Exhibit D1 -NCMC Sale to Morgan
Exhibit D2-NCMC Forgery TILA Signatures
Exhibit D3-NCMC Collat files-No Funding
Exhibit D4 –reserved
Exhibit D4 -reserved

# EXHIBIT **AA**

**SCOTUS**

**Jesinoski**

**Syllabus**

(Slip Opinion)          OCTOBER TERM, 2014                    1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## JESINOSKI ET UX. *v.* COUNTRYWIDE HOME LOANS, INC., ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

No. 13–684.   Argued November 4, 2014—Decided January 13, 2015

Exactly three years after borrowing money from respondent Countrywide Home Loans, Inc., to refinance their home mortgage, petitioners Larry and Cheryle Jesinoski sent Countrywide and respondent Bank of America Home Loans, which had acquired Countrywide, a letter purporting to rescind the transaction. Bank of America replied, refusing to acknowledge the rescission's validity. One year and one day later, the Jesinoskis filed suit in federal court, seeking a declaration of rescission and damages. The District Court entered judgment on the pleadings for respondents, concluding that a borrower can exercise the Truth in Lending Act's right to rescind a loan, see 15 U. S. C. §1635(a), (f), only by filing a lawsuit within three years of the date the loan was consummated. The Jesinoskis' complaint, filed four years and one day after the loan's consummation, was ineffective. The Eighth Circuit affirmed.

*Held*: A borrower exercising his right to rescind under the Act need only provide written notice to his lender within the 3-year period, not file suit within that period. Section 1635(a)'s unequivocal terms—a borrower "shall have the right to rescind . . . *by notifying the creditor . . . of his intention to do so*" (emphasis added)—leave no doubt that rescission is effected when the borrower notifies the creditor of his intention to rescind. This conclusion is not altered by §1635(f), which states *when* the right to rescind must be exercised, but says nothing about *how* that right is exercised. Nor does §1635(g)—which states that "in addition to rescission the court may award relief . . . not relating to the right to rescind"—support respondents' view that rescission is necessarily a consequence of judicial action. And the fact that the Act modified the common-law condition precedent to rescission at

2        JESINOSKI *v.* COUNTRYWIDE HOME LOANS, INC.

Syllabus

law, see §1635(b), hardly implies that the Act thereby codified rescission in equity.  Pp. 2–5.

729 F. 3d 1092, reversed and remanded.

SCALIA, J., delivered the opinion for a unanimous Court.

Cite as: 574 U. S. ____ (2015)    1

Opinion of the Court

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 13–684

## LARRY D. JESINOSKI, ET UX., PETITIONERS v. COUNTRYWIDE HOME LOANS, INC., ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

[January 13, 2015]

JUSTICE SCALIA delivered the opinion of the Court.

The Truth in Lending Act gives borrowers the right to rescind certain loans for up to three years after the transaction is consummated. The question presented is whether a borrower exercises this right by providing written notice to his lender, or whether he must also file a lawsuit before the 3-year period elapses.

On February 23, 2007, petitioners Larry and Cheryle Jesinoski refinanced the mortgage on their home by borrowing $611,000 from respondent Countrywide Home Loans, Inc. Exactly three years later, on February 23, 2010, the Jesinoskis mailed respondents a letter purporting to rescind the loan. Respondent Bank of America Home Loans replied on March 12, 2010, refusing to acknowledge the validity of the rescission. On February 24, 2011, the Jesinoskis filed suit in Federal District Court seeking a declaration of rescission and damages.

Respondents moved for judgment on the pleadings, which the District Court granted. The court concluded that the Act requires a borrower seeking rescission to file a lawsuit within three years of the transaction's consum-

2      JESINOSKI *v.* COUNTRYWIDE HOME LOANS, INC.

Opinion of the Court

mation. Although the Jesinoskis notified respondents of
their intention to rescind within that time, they did not
file their first complaint until four years and one day after
the loan's consummation. 2012 WL 1365751, *3 (D Minn.,
Apr. 19, 2012). The Eighth Circuit affirmed. 729 F. 3d
1092, 1093 (2013) (*per curiam*).

Congress passed the Truth in Lending Act, 82 Stat. 146,
as amended, to help consumers "avoid the uninformed use
of credit, and to protect the consumer against inaccurate
and unfair credit billing." 15 U. S. C. §1601(a). To this
end, the Act grants borrowers the right to rescind a loan
"until midnight of the third business day following the
consummation of the transaction or the delivery of the
[disclosures required by the Act], whichever is later, by
notifying the creditor, in accordance with regulations of
the [Federal Reserve] Board, of his intention to do so."
§1635(a) (2006 ed.).* This regime grants borrowers an
unconditional right to rescind for three days, after which
they may rescind only if the lender failed to satisfy the
Act's disclosure requirements. But this conditional right
to rescind does not last forever. Even if a lender *never*
makes the required disclosures, the "right of rescission
shall expire three years after the date of consummation of
the transaction or upon the sale of the property, whichever
comes first." §1635(f). The Eighth Circuit's affirmance
in the present case rested upon its holding in *Keiran* v. *Home
Capital, Inc.*, 720 F. 3d 721, 727–728 (2013) that, unless a
borrower has filed a suit for rescission within three years
of the transaction's consummation, §1635(f) extinguishes
the right to rescind and bars relief.

That was error. Section 1635(a) explains in unequivocal

---

*Following the events in this case, Congress transferred the author-
ity to promulgate rules implementing the Act to the Consumer Finance
Protection Bureau. See Dodd-Frank Wall Street Reform and Consumer
Protection Act, §§1061(b)(1), 1100A(2), 1100H, 124 Stat. 2036, 2107,
2113.

Opinion of the Court

terms how the right to rescind is to be exercised: It provides that a borrower "shall have the right to rescind . . . *by notifying the creditor, in accordance with regulations of the Board, of his intention to do so*" (emphasis added). The language leaves no doubt that rescission is effected when the borrower notifies the creditor of his intention to rescind. It follows that, so long as the borrower notifies within three years after the transaction is consummated, his rescission is timely. The statute does not also require him to sue within three years.

Nothing in §1635(f) changes this conclusion. Although §1635(f) tells us *when* the right to rescind must be exercised, it says nothing about *how* that right is exercised. Our observation in *Beach* v. *Ocwen Fed. Bank,* 523 U. S. 410, 417 (1998), that §1635(f) "govern[s] the life of the underlying right" is beside the point. That case concerned a borrower's attempt to rescind in the course of a foreclosure proceeding initiated six years after the loan's consummation. We concluded only that there was "no federal right to rescind, defensively or otherwise, after the 3-year period of §1635(f) has run," *id.,* at 419, not that there was no rescission until a suit is filed.

Respondents do not dispute that §1635(a) requires only written notice of rescission. Indeed, they concede that written notice suffices to rescind a loan within the first three days after the transaction is consummated. They further concede that written notice suffices after that period if the parties agree that the lender failed to make the required disclosures. Respondents argue, however, that if the parties dispute the adequacy of the disclosures—and thus the continued availability of the right to rescind—then written notice *does not* suffice.

Section 1635(a) nowhere suggests a distinction between disputed and undisputed rescissions, much less that a lawsuit would be required for the latter. In an effort to sidestep this problem, respondents point to a neighboring

provision, §1635(g), which they believe provides support
for their interpretation of the Act. Section 1635(g) states
merely that, "[i]n any action in which it is determined that
a creditor has violated this section, in addition to rescis-
sion the court may award relief under section 1640 of this
title for violations of this subchapter not relating to the
right to rescind."  Respondents argue that the phrase
"award relief" "in addition to rescission" confirms that
rescission is a consequence of judicial action.  But the fact
that it can be a consequence of judicial action when
§1635(g) is triggered in no way suggests that it can *only*
follow from such action.  The Act contemplates various
situations in which the question of a lender's compliance
with the Act's disclosure requirements may arise in a
lawsuit—for example, a lender's foreclosure action in
which the borrower raises inadequate disclosure as an
affirmative defense.  Section 1635(g) makes clear that a
court may not only award rescission and thereby relieve
the borrower of his financial obligation to the lender, but
may also grant any of the remedies available under §1640
(including statutory damages).  It has no bearing upon
whether and how borrower-rescission under §1635(a) may
occur.

Finally, respondents invoke the common law.  It is true
that rescission traditionally required either that the re-
scinding party return what he received before a rescission
could be effected (rescission at law), or else that a court
affirmatively decree rescission (rescission in equity).  2 D.
Dobbs, Law of Remedies §9.3(3), pp. 585–586 (2d ed.
1993).  It is also true that the Act disclaims the common-
law condition precedent to rescission at law that the bor-
rower tender the proceeds received under the transaction.
15 U. S. C. §1635(b).  But the negation of rescission-at-
law's tender requirement hardly implies that the Act
codifies rescission in equity.  Nothing in our jurisprudence,
and no tool of statutory interpretation, requires that a

Opinion of the Court

congressional Act must be construed as implementing its
closest common-law analogue. Cf. *Astoria Fed. Sav. &
Loan Assn.* v. *Solimino,* 501 U. S. 104, 108–109 (1991).
The clear import of §1635(a) is that a borrower need only
provide written notice to a lender in order to exercise his
right to rescind. To the extent §1635(b) alters the tradi-
tional process for unwinding such a unilaterally rescinded
transaction, this is simply a case in which statutory law
modifies common-law practice.

*       *       *

The Jesinoskis mailed respondents written notice of
their intention to rescind within three years of their loan's
consummation. Because this is all that a borrower must
do in order to exercise his right to rescind under the Act,
the court below erred in dismissing the complaint. Accord-
ingly, we reverse the judgment of the Eighth Circuit and
remand the case for further proceedings consistent with
this opinion.

*It is so ordered.*

# EXHIBIT **A1**

## **Notice of Mistake**

## **Sep 2011**

REGISTERED MAIL #:RE 685 815 813 US

Invoice# TY- RE685815813US-001



## NOTICE OF MISTAKE AND REQUEST
## FOR ASSISTANCE AND CORRECTION
NOTICE TO PRINCIPAL IS NOTICE TO AGENT
NOTICE TO AGENT IS NOTICE TO PRINCIPAL
**Applicable to All Successors and assigns .**
Silence is Acquiescence, Agreement, Dishonor
This is a self-executing contract
Non-negotiable – Between the Parties

September 2nd, 2011

**From:**  TSVETANA YVANOVA
22054 Crespi Street
Woodland Hills, CA 91364

### To: Recipients Involved in the First Trust Deed:

OCWEN FINANCIAL CORPORATION
**Mr. Ronald M. Faris, CEO, President, Director** ( Successors & Assigns)
2002 Summitt Boulevard, 6th Fl
Atlanta, Georgia 30346
**John P. Van Vlack**, CFO, Executive Vice President
**Scott W. Anderson**, Executive Vice President
**John V. Britti**, Vice President of Finance

OCWEN LOAN SERVICING LLC
**Mr. William C Erbey, CEO/Manager** (Successors & Assigns)
1661 Worthington Rd, Ste 100
West Palm Beach, FL  33409-6493
**Kevin J Wilcox**, Secretary,
**Paul A Koches**, Senior VP,
**David J Gunter** , CFO,

DEUTSCHE BANK TRUST CORPORATION
**Attn: Chief Executive Officer** (Successors & Assigns)
300 South Grand Avenue, 41st Floor
Los Angeles, CA 90071

DEUTSCHE BANK NATIONAL TRUST CO
**Attn: President / CEO** (Successors & Assigns)
1761 E Saint Andrew Place,
Santa Ana, CA 92705-4934

Notice of Mistake

Page 1 of 7

REGISTERED MAIL #:RE 685 815 813 US                    Invoice# TY- RE685815813US-001

CC:
FIDELITY NATIONAL TITLE INSURANCE COMPANY
   **Mr. William P. Foley II, Chairman and President** (Successors & Assigns)
   601 Riverside Avenue, Jacksonville, Florida 32204


STEWART TITLE OF CALIFORNIA.INC
   **Mr. Steve Vivanco**, President ( Successors & Assigns)
   525 North Brand Blv, Glendale, CA 91203

NEW HAVEN FINANCIAL, INC
   Attn: President/CEO
   24025 Park Sorento, Ste #150
   Calabasas, CA 92302

**Ref.:** Mortgage or Loan #1008870581 – NEW CENTURY MORTGAGE CORP
   Mortgage or Loan: #706 37 2174 – OCWEN LOAN SERVICING, LLC
   Title Ins. Policy # 27-01-90-358745- FIDELITY NATIONAL TITLE INSURANCE CO.

   Title Ins. Policy # M-2229-000822101, STEWART TITLE OF CALIFORNIA INC

<u>Attachments:</u>  1. NOTICE OF CLAIM to Fidelity Title Insurance Company

Dear Recipients:

    After performing diligent search for verification of information gleaned from the World Wide Web, the below has been found.  All information herein or herewith is drawn from sources, as cited, of integrity.  Verification comes from statements issued by The United States, STATE of CALIFORNIA, their regulatory agencies and manuals; and from government and private instrumentalities.  With those sources in mind certain conclusions appear which ARE stated as personal legal determinations.  Further, your duty to produce documents is required by law.  You will find certain forms referenced herein or herewith showing the final basis for the conclusions.

       The request for assistance is based on mistakes.  Being that mistakes on both sides of the contracts, or, presumptive contracts, more likely are apparent.  It is believed that working together will solve the issues herein and herewith.  Therefore, it is formally requested that assistance be provided by Mr. William C Erbey or an authorized employee of OCWEN Loan Servicing LLC, and all its agents or employees in closing the matters timely and quickly.

    <u>Appendix A</u> is the OVERVIEW of what we discovered that **New Century Mortgage Corporation & its successors** have done with the NOTE. The fact is the NOTE is our promise to pay, New Century Mortgage Corporation & its successor OCWEN Loan Servicing LLC,, hereafter referred to as the **Lender**, has monetized our NOTE and turned it into a cash item, and used the Deed of Trust as security for the NOTE. As a result, the **Lender**, did not loan its own assets, it loaned credit, a FRAUD, FRAUD IN THE INDUCEMENT, FAILURE OF CONSIDERATION, CONSTRUCTIVE FRAUD, done in CONSPIRACY, an utterly void and without value transaction. All of this is supported and shown by escrow documents as detailed under **<u>Appendix B</u>. <u>Appendix C</u>** will show the core issue that there is no contract with the **New Century Mortgage Corporation**

---

Notice of Mistake                                                      Page 2 of 7

REGISTERED MAIL #:RE 685 815 813 US      Invoice# TY- RE685815813US-001

& its successor OCWEN Loan Servicing LLC, and will also show the reasons that there is no standing or capacity for the **Lender**, which leads to our conclusion that the New Century Mortgage Corporation & its successor OCWEN Loan Servicing LLC, have no entitlement, no legal protections without the production of the contract exhibiting all the necessary requirements of a contract by operation of law.

*No contract, no standing.*
*No standing, no claim.*
*No claim, no defense.*

    If at any time you find error in this presentment, it is formally, under contract and trust terms, requested that statement exposing such be disclosed. As a layman at law, the legal determinations herein are of a personal, private nature and **New Century Mortgage Corporation & its successor OCWEN Loan Servicing LLC**, is required to hold this privacy unless consent is given to disclose this instrument to any one.

    As these matters are very, very, serious for all parties, it is believed cooperation in closing out the issues is paramount.

    This letter is my act of good faith to correct mistakes.

    This letter offers release for what could be found to be illegal acts.

    This letter provides opportunity for all parties to New Century Mortgage Corporation & its successor OCWEN Loan Servicing LLC mortgage # 0706 372 174 to be made whole.

    Failure by New Century Mortgage Corporation & its successor OCWEN Loan Servicing LLC to act will be recorded as fact showing intent to deceive, fraud, conversion and other felonies by bank officers. This is simply because the corporation, New Century Mortgage Corporation & its successors are incapable of felony as it is merely a piece of paper.

## SYNOPSIS

    I made **mistakes** in relying on certain acts by Mr. Brad Morrice, CEO of **New Century Mortgage Corporation & its successor OCWEN Loan Servicing LLC** . Our reliance was done in contact with professionals operating the mortgage/bank systems. In short, our reliance was induced under professional standard, in our expectation of good faith and clean hands. Since we discovered these errors, a choice to believe said errors are founded on mistakes is foundational for this instrument.

    In the event Mr. William C Erbey of OCWEN Loan Servicing LLC chooses to assist in correction of these mistakes, the following will make me/us whole and exhibit clean hands by New Century Mortgage Corporation & its successor OCWEN Loan Servicing LLC.

1. The Deed of Trust is cleared of any claim by **New Century Mortgage Corporation** & its successor OCWEN Loan Servicing LLC with the transfer of clean title back to Tsvetana Yvanova.
2. The cash/current funds expended during refinancing of 22054 Crespi Street, Woodland

REGISTERED MAIL #:RE 685 815 813 US                    Invoice# TY- RE685815813US-001

Hills, CA 91364, including of all outlays and payments is to be reimbursed by **New Century Mortgage Corporation &** its successor OCWEN Loan Servicing LLC.

3. I will issue a new 1099 OID for the full value of the purchase price and all expenses in favor of New Century Mortgage Corporation & its successor OCWEN Loan Servicing LLC, with a new 1099 A abandoning those funds to OCWEN Loan Servicing LLC. (Or, in the alternative, issue release of those funds via letter of instruction.)

4. The parties agree to hold the other harmless for all acts and omissions prior or future; unless new evidence of a compelling nature is disclosed.

It is believed these four (4) items will make both parties whole in an open transparent manner which corrects all mistakes by any party.

Counter presentments are welcome so long as both parties are closed as to liabilities.

Again, please advise me if there is anything incorrect or unfair in what is stated herein.

Be advised that in the event these issues are not settled in a reasonable amount of time, seven (7) days seems appropriate, I will take all appropriate action. In contemplation of corruption of these issues and to prevent abuse of process, this instrument is placed in a time vault, on the World Wide Web ready for massive dissemination.

I look forward to resolving the exposed mistakes timely and quickly.

Done this 1st day of September 2011, as stated under pains and penalties of perjury under the laws of the United States of America and the State of California.

Tsvetana Ivanova

Under penalty of Perjury 28 U.S.C. § 1746, 1.

Witness: _____
Sharon Van Rijs

Witness: _____
Anna-lee Balita

CC: Fidelity National Title Insurance Company
    Mr. William P. Foley II Chairman and President
    601 Riverside Avenue, Jacksonville, Florida 32204

**Appendix A**

**OVERVIEW**

1. NOTE is our promise to pay at a future time, labor backing both the NOTE and all current funds circulating as currency.

2. Monetizing or securitizing the NOTE turns it into a cash item.

Notice of Mistake                                        Page 4 of 7

REGISTERED MAIL #:RE 685 815 813 US                    Invoice# TY- RE685815813US-001

3. Deed of Trust is security for the NOTE.  Trust law reverses rules of evidence; Trustee must prove good faith, full disclosure and proper procedures for operations.

4. Escrow is the transfer point between seller, buyer, Title Company, so called lender, where the NOTE is exchanged for deed.

5. **New Century Mortgage Corporation** issued check to escrow under internal request procedure.  At time of issuing audits will expose that there is no evidence verifying: a) source of money; b) owned by bank; c) at time, or later, of issuing check, all of which is available as proof via public records of corporation.

6. **New Century Mortgage Corp** issued NSF (non-sufficient funds) check.

7. **New Century Mortgage Corp** never possessed the NOTE until after transfer between seller and buyer, deed for check.

8. Deed of Trust executed at closing of escrow is security for the NOTE.

9. **New Century Mortgage Corp** later records as sent, NOTE to offset the liability of check.

10. **New Century Mortgage Corp&** records, audited statement, shows conclusively that **New Century Mortgage Corp** loaned credit, buyers credit, which took place at escrow closing.

11. **New Century Mortgage Corp** did not loan its own assets, it loaned credit, not even theirs, an ultra vires act, illegal under law and regulating authorities.  A FRAUD, FRAUD IN THE  INDUCEMENT, FAILURE OF CONSIDERATION, CONSTRUCTIVE FRAUD, done in CONSPIRACY, ISSUE A FRAUDULENT SECURITY, an utterly void and without value transaction.

12. Transfer of Title to registry systems or second servicer is fraudulent.

13. Bank claims abandoned funds after three (3) years. This is double payment and never disclosed.

14. Deed of Trust is fraudulent, resulting in defective Title, unmarketable title.

## Appendix B

    Each of these statements is shown by escrow documents.  The **New Century Mortgage Corp** & its successor OCWEN Loan Servicing LLC acts are shown as follows:

1. Balance sheet relating to the original 'loan', shows ledgering of the account as required to be reported and open knowledge under 12 USC § 242, § 347 and proved by 1099 reports available from IRS.

2. The 424 B-5 prospect reports shows filing facts concerning the security issued under  the note and Deed of Trust without reporting bases of the derivative.

3. Securities and Exchange Commission Reports S 3 A shows the sale of the 'note' and form of item sold.

4. FASB (Financial Accounting Standards Board) forms 125, 133, 140, 5, 95 guides an auditor to the liability side of the banks books, exposing exactly where the 'money' came from and shows where it went and under what procedure and instrument.

5. The NOTE as negotiable instrument falls under UCC.

6. There is never a receipt given for the deposit of value.

7. 12 USC § 1813 (L) (I) discloses that deposit of a promissory note is cash to the **New Century Mortgage Corp&** its successor OCWEN Loan Servicing LLC.  The New Century Mortgage Corp's cash is my cash, not the New Century Mortgage Corp - the proof is the loan paper.

---

Notice of Mistake                                            Page 5 of 7